1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

11

## EASTERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17

| | |
|---|---|
| JUAN DEDIOS BURBOA, ) | 1:09-CV-01694 LJO-MJS HC |
| Petitioner, ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| LELAND MCEWEN, Warden, ) | |
| Respondent. ) | |

18
19
20
21

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Leland McEwen, as acting warden of Calipatria State Prison, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

22

## I.      BACKGROUND

23
24
25
26
27
28

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on May 19, 2008, of first degree murder and two counts of attempted murder.  As to the murder charge, the jury found true two special-circumstance allegations, that the murder was committed during the commission of a robbery and during the commission

of a kidnaping. In addition, the jury found true three firearm enhancements. Petitioner was sentenced to a total term of life without the possibility of parole plus 86 years 4 months.

On March 13, 2009, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"), affirmed the judgment of the trial court. Petitioner filed a petition for review in the California Supreme Court on April 3, 2009. The petition was summarily denied on May 22, 2009.

On September 25, 2009, Petitioner filed the instant federal habeas corpus petition. Petitioner raises three claims for relief:  (1) prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments was committed during closing arguments when the prosecutor stated to the jury that a gunshot wound constitutes "great bodily injury" as a matter of law; (2) the trial court erred in denying Petitioner's Marsden[1] motion, thereby violating Petitioner's rights to due process and the effective representation of counsel; and (3) that Petitioner was prejudiced as a result of ineffective assistance of counsel in  failing to request a limiting instruction. On June 24, 2010, Respondent filed an answer to the petition. Petitioner filed a traverse on September 7, 2010.

## II.    STATEMENT OF THE FACTS[2]

According to [Petitioner], a week before the murders, he and three others discussed the possibility of robbing drug couriers who were going to come through the area. The couriers were known to Rigoberto Casillas, one of the coconspirators, also know as "Pitiao." At some point during the planning, another of the coconspirators, a man called "Parientito," said he did not want to let the men go because they would become enemies and later repeated that the couriers could not be left alive.

On July 12, 2007, the day of the murder, [Petitioner] was told that the couriers were on their way and gave them directions to his house. When the couriers arrived in their white Ford truck, [Petitioner] and his coconspirators were armed. Casillas stayed behind, but the other three men, including [Petitioner], ordered the three drug couriers back into the truck. They drove to an orchard, where the couriers were ordered out and their wallets were taken. [Petitioner] described the drug couriers as an older fat man, a tall light-skinned

---

[1] Under California law, a "Marsden" motion is made by a defendant seeking new counsel on the basis that his appointed counsel is providing inadequate representation. People v. Marsden, 2 Cal.3d 118 (1970).

[2] The Fifth District Court of Appeal's summary of the facts in its March 13, 2009 opinion is presumed correct. 28 U.S.C. §§ 2254(e)(1).

man, and a dark-skinned man. Parientito immediately shot the dark-skinned man, later identified as Jose Crispin, in the head. Crispin died as a result of his wounds. [Petitioner] shot at the light-skinned man, later identified as Rafael Moreno. The older man who was later identified as Arturo Aviles, was shot by Parientito. Injured, Moreno and Aviles ran to a nearby residence and police were called. When police arrived, Moreno was covered with blood and had three gunshot wounds, one to his face, another to his hand, and the last to his chest. Aviles was shot above his right eyebrow and had an abrasion near his hairline. Moreno and Aviles required medical attention for their wounds.

After the shootings, the three coconspirators went to the home of Carlos Chavez, also known as "Congo." Chavez allowed the men to hide the truck in his garage. The men removed what [Petitioner] believed to be five, one-pound packages of crystal methamphetamine and some heroin (chiva) from the truck. The truck was abandoned at a rest stop near Frazier Park. Soon afterward, [Petitioner] left for Mexico.

The investigation of the murders ultimately led police to [Petitioner], who initially denied any involvement, but later confessed to the crimes. The details of [Petitioner's] confession matched the physical evidence found by police at the scene and the wounds suffered by the victims. The truck was located in the rest stop where [Petitioner] said it had been abandoned.

[Petitioner] told police that he was afraid of the others because they had always been involved in bad things and that Chavez had killed someone in Mexico. He said he did not want to kill anyone, but he did not withdraw from the plan because he was afraid Parientito would do something to him.

(Lodged Doc. 3.)

## III.   DISCUSSION

### A.   Jurisdiction and Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06.  "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an incorrect application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130

S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

## 2.   Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Harrington instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id.  To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.    Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002);  Musalin v. Lamarque, 555 F.3d at 834.

## IV.    REVIEW OF CLAIMS

### A.    Prosecutorial Misconduct and Related Ineffective Assistance of Counsel

Petitioner first alleges that his constitutional rights to a fair trial and due process of law were violated due to prosecutorial misconduct when, during the closing arguments at trial, the prosecutor told jurors that a gunshot wound constitutes "great bodily injury" as a matter of law. While it is not clearly stated in his Petition, Petitioner made a claim to the California courts – and appears to make the same claim here – that his counsel's failure to object to the prosecutor's statement constituted ineffective assistance of counsel in violation of his

1    constitutional rights.    Respondent contends Petitioner is incorrect, that Petitioner is

2    procedurally barred from making this claim in a federal habeas proceeding, and that in any

3    event, the state court reasonably rejected the claim.

4           Petitioner presented this claim in a direct appeal which was denied in a reasoned

5    decision by the Fifth District Court of Appeal and summarily denied by the California Supreme

6    Court.   Because the California Supreme Court's opinion is summary in nature, this Court

7    "looks through" that decision and presumes it adopted the reasoning of the California Court

8    of Appeal, the last state court to have issued a reasoned opinion.   See Ylst v. Nunnemaker,

9    501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through"

10   presumption that higher court agrees with lower court's reasoning where former affirms latter

11   without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000)

12   (holding federal courts look to last reasoned state court opinion in determining whether state

13   court's rejection of petitioner's claims was contrary to or an unreasonable application of federal

14   law under 28 U.S.C. § 2254(d)(1)).

15          In denying Petitioner's claim, the appellate court explained:

16          *I. Prosecutorial misconduct*

17                 [Petitioner] contends that the prosecutor committed misconduct when he
             made this argument to the jury:

18
19                 "And, by the way, we'll put this to rest real quick. The law flat out says gunshot
             wounds are great bodily injury. Anything more than an insignificant or trivial
             injury. Gunshot wounds are GBI."

20
21                 The prosecutor made this argument in response to the defense argument
             that there was no evidence that the wounds were more than insignificant or
             trivial. There was no objection to the prosecutor's comments and no request for
22           an admonition.

23                 A prosecutor's conduct violates the Fourteenth Amendment to the federal
             Constitution when it results in such unfairness at trial that the conviction
24           amounts to a denial of due process. Conduct by a prosecutor that does not
             render a criminal trial fundamentally unfair is prosecutorial misconduct under
25           state law only if it involves the use of deceptive or reprehensible methods to
             attempt to persuade either the trial court or the jury. (People v. Ayala (2000) 23
26           Cal.4th 225, 283-284.) Misstatement of the law generally is considered to be
             misconduct by a prosecutor. (People v. Anzalone (2006) 141 Cal.App.4th 380,
27           393 [prosecutor committed error when he misstated law relevant to definition of
             attempted murder]; People v. Pigage (2003) 112 Cal.App.4th 1359, 1369-1370
28           [prosecutor committed misconduct when he muddled law governing entrapment
             defense].)

Although a close call, the prosecutor's remarks can be construed to suggest that gunshot wounds are, as a matter of law, a category of injuries falling within the statutory definition of "great bodily harm." This is an incorrect statement of the law. There is no generic category of injury that qualifies as great bodily injury as a matter of law, without a determination of the quality of that injury. (People v. Nava (1989) 207 Cal.App.3d 1490, 1497.) Whether great bodily injury occurred is a question of fact for the jury. (People v. Le (2006) 137 Cal.App.4th 54, 58-59.) Under these circumstances, however, in order to preserve a claim of misconduct for appeal, a defendant must object to the alleged misstatement of law and seek an admonition. Failure to do so forfeits the challenge on appeal. (People v. Ayala, supra, 23 Cal.4th at p. 284.) [Petitioner] has failed to preserve his challenge.

[Petitioner] raises two additional challenges in the hopes of breathing life into his claim. The first we reject summarily. An objection would not have been futile. (People v. Wright (1990) 52 Cal.3d 367, 433 [no need to make futile objection].) There is ample case authority to support the premise that misstatements of the law by the prosecutor are correctable with a proper admonishment from the court, and this case poses no exception to the general rule. (See People v. Combs (2004) 34 Cal.4th 821, 854 [failure to object to prosecutor's misstatement of law forfeits issue on appeal because misstatements can be cured by admonition].) There is nothing about the statement here that could not have been disregarded by the jury had it been instructed to do so.

[Petitioner's] second claim is that he was denied effective assistance of counsel when counsel failed to object to the prosecutor's misstatement. Where there is a claim of ineffective assistance of counsel, the defendant must show that (1) counsel failed to act in a manner to be expected of a reasonably competent attorney, and (2) it is reasonably probable that a more favorable result would have been obtained absent counsel's failings. (People v. Lewis (1990) 50 Cal.3d 262, 288.) Prejudice must be demonstrated. (People v. Williams (1988) 44 Cal.3d 883, 937.) When a defendant cannot establish that it is reasonably probable a more favorable result would have been obtained absent counsel's failings, it is unnecessary to first consider whether counsel's performance was deficient. (People v. Welch (1999) 20 Cal.4th 701, 751.)

When there has been a claim of prosecutorial misconduct based on remarks to the jury, in order to show prejudice, a defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. (People v. Gurule (2002) 28 Cal.4th 557, 627.) [Petitioner] cannot do so. The jury properly was instructed that it was to determine whether [Petitioner] had personally and intentionally inflicted great bodily injury. The instructions and the arguments of both counsel put the issue squarely in the hands of the jury, in spite of the prosecutor's isolated misstatement.

The jury was also told that the term "great bodily injury" means "a significant or substantial physical injury." (§ 12022.7, subd. (f).) The jury correctly was instructed that minor, trivial, or moderate injuries are not great bodily injury. (People v. Armstrong (1992) 8 Cal.App.4th 1060, 1066.) Additionally, the jury was told that if anything said by the attorneys conflicted with the instructions given, the jury was to follow the law as given by the court. We presume that the jury understood and followed the instructions given in the absence of evidence

to the contrary. (People v. Hinton (2006) 37 Cal.4th 839, 871.) Nothing in the record suggests the jury misunderstood the instructions or misapplied the law. (People v. Pigage, supra, 112 Cal.App.4th at pp. 1369-1370.)

Further, although there may be some factual circumstances where a gunshot wound does not amount to great bodily injury, for example, a superficial graze without pain or disfigurement, the evidence presented in this case was that Moreno had been shot three times. He had extensive bleeding from his face, hand, and chest. He had holes in his skin. The jury saw pictures of the wounds. Moreno reported significant pain and was taken to the hospital for treatment. Given this evidence, it is highly unlikely the jury would have concluded that the injuries suffered by Moreno were trivial, insignificant, or moderate in quality. The lack of a permanent or long-lasting injury does not preclude a finding of great bodily injury. (People v. Mixon (1990) 225 Cal.App.3d 1471, 1489.) A "significant or substantial physical injury" does not have to meet any particular standard for severity or duration. It need only be a substantial injury beyond that injury inherent in the offense itself. (People v. Escobar (1992) 3 Cal.4th 740, 746-747, 750.)

For these reasons, under any theory or standard of review, the comments of the prosecutor did not affect the fairness or outcome of the trial. (People v. Ayala, supra, 23 Cal.4th at pp. 283-284 [in misconduct cases, question is whether there is reasonable likelihood jury construed or applied complained-of remarks in objectionable fashion]; People v. Welch, supra, 20 Cal.4th at p. 751 [when defendant cannot establish reasonable probability that more favorable result would have been obtained absent counsel's failings, claim of ineffective assistance of counsel fails].) Since there is no prejudice, [Petitioner] cannot prevail on his ineffective-assistance-of-counsel claim.

(See Lodged Doc. 3.)

### 1.   Prosecutorial Misconduct

The first issue Petitioner raises is that the prosecutor's incorrect statement to the jury, that gunshot wounds cause great bodily injury as a matter of law, constituted prosecutorial misconduct that rendered his trial fundamentally unfair such that he was denied his right to due process under the Fourteenth Amendment.

### 2.   Procedural Default

Respondent contends that Petitioner's claim is barred by the procedural default doctrine as stated in Coleman v. Thompson, 501 U.S. 722 (1991).   Coleman bars review of a petitioner's federal habeas claim when the claim was rejected in state court based on an adequate and independent state procedural bar. Id. at 729-30.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Id. at 750.

Respondent points out that such a procedural bar must have risen from explicit and independent state law.  Id. at 735; Harris v. Reed, 489 U.S. 255, 265 (1988). For the procedural bar to be adequate, the bar must be clear, consistently applied, and well established at the time of the alleged default.  Collier v. Bayer, 408 F.3d 1279, 1284 (9th Cir. 2005).  Also, the opinion of the last state court rendering a judgment in the case must clearly and expressly state that its judgment rests on a state procedural bar.  Harris, 489 U.S. at 263; see Coleman, 501 U.S. at 729-30.

Petitioner failed to object to the prosecutor's misstatement during closing argument, and thus the court did not have occasion to admonish the jury regarding the correct statement of the law. The state court ruled that "in order to preserve a claim of misconduct for appeal, a defendant must object to the alleged misstatement of law and seek an admonition.  Failure to do so forfeits the challenge on appeal. [Petitioner] has failed to preserve his challenge." (Lodged Doc. 3 at 4.) In making this ruling, the state court relied on California's contemporaneous objection rule, "that a defendant cannot complain on appeal of misconduct by a prosecutor at trial unless in a timely fashion he made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." People v. Ayala, 23 Cal.4th 225, 284 (2000); People v. Ochoa, 19 Cal.4th 353, 427 (1998); e.g., People v. Samayoa, 15 Cal.4th 795, 841 (1997); People v. Benson, 52 Cal.3d 754, 794 (1990).  The Supreme Court has held that a violation of a state contemporaneous objection rule can indeed result in a habeas petitioner's claim being barred under the procedural default doctrine. Wainwright v. Sykes, 433 U.S. 72, 90. Further, the Ninth Circuit has held that the California contemporaneous objection rule results in a procedural default of a prosecutorial misconduct claim. Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999); Howard v. Campbell, 305

1   Fed. Appx. 442, 444 (9th Cir. Cal. 2008)[3].

2       The Ninth Circuit uses a burden-shifting analysis to determine adequacy. <u>Bennett v.</u>

3   <u>Mueller</u>, 322 F.3d 573, 585-586 (9th Cir. 2003). Under this analysis, when the state pleads,

4   as an affirmative defense, that a claim is procedurally barred, the burden shifts to the petitioner

5   to challenge the adequacy of that bar by showing that it has been inconsistently applied. <u>Id</u>.

6   Where the petitioner challenges the adequacy of the bar, the state retains the ultimate burden

7   of proving adequacy. <u>Id</u>.

8       Respondent argues that the contemporaneous objection rule in question is explicit and

9   independent state law. The opinion of the last state court rendering judgment, the Fifth District

10  Court of Appeal, citing <u>Ayala</u>, clearly and expressly stated that Petitioner's failure to preserve

11  his challenge was grounds to deny his claim.

12      In this case, Petitioner, who is proceeding pro se, makes no response to the procedural

13  bar asserted by respondent and therefore fails to meet his burden of shifting the burden back

14  to respondent. <u>See</u> <u>King v. Lamarque</u>, 464 F.3d 963, 967 (9th Cir. 2006) ("<u>Bennett</u> requires

15  the petitioner to 'place [the procedural default] defense in issue" to shift the burden back to the

16  government"). It should also be noted that when challenged, federal courts have questioned

17  whether the contemporaneous objection rule is consistently applied and well established. <u>See</u>

18  e.g., <u>Steele v. Ayers</u>, 2010 U.S. Dist, LEXIS 70731 (E.D. Cal. July 14, 2010) (failing to rely on

19  other federal courts review of procedural default based on the contemporaneous objection rule

20  based on the lack of reasoned decisions). In light of recent Supreme Court authority, even if

21  not applied entirely consistently, a state rule can be considered consistently applied. <u>See</u>

22  <u>Walker v. Martin</u>, 131 S. Ct. 1120, 1128 (2011) ("A discretionary state procedural rule ... can

23  serve as an adequate ground to bar federal habeas review.  A rule can be firmly established

24  and regularly followed even if the appropriate exercise of discretion may permit consideration

25  of a federal claim in some cases but not others.") (citations and internal quotations omitted).

26

27      [3] Ninth Circuit Rule 36-3(b) provides: "Unpublished dispositions and orders of this Court issued on or after

28  January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." However, Ninth Circuit
    Rule 36-3(a) provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant
    under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

1   Here, Petitioner as not provided any evidence to establish that contemporaneous objection

2   rule was not consistently applied. Accordingly, this Court finds that Petitioner has not met his

3   burden of challenging the procedural default and his claim is barred from federal review.

4       To overcome a procedural default a prisoner must "demonstrate cause for the default

5   and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

6   failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501

7   U.S. at 750. "'[C]ause' under the cause and prejudice test must be something *external* to the

8   petitioner, something that cannot fairly be attributed to him: '[W]e think that the existence of

9   cause for a procedural default must ordinarily turn on whether the prisoner can show that

10  some objective factor external to the defense impeded counsel's efforts to comply with the

11  State's procedural rule.'" Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986))

12  (emphasis in original).

13                  a.      Cause

14      In Coleman, the court noted that attorney error which rises to the level of ineffective

15  assistance of counsel is considered "cause" within the meaning of this rule. Coleman, 501

16  U.S. at 753-54.  This is because a defendant has a right to effective assistance of counsel

17  under the Sixth Amendment, and a violation of that must be seen as an external factor, and

18  thus the error must be imputed to the state. Id.; Murray, 477 U.S. at 488. Here, Petitioner has

19  alleged that his Sixth Amendment right to effective counsel was violated when his attorney

20  failed to object to the prosecutor's incorrect statement of the law during closing.  If Petitioner

21  can succeed on a claim that he has suffered ineffective assistance of counsel and that he was

22  prejudiced by the state court's procedural ruling, he may overcome the procedural bar to

23  making a habeas corpus claim. However, the Court need not determine if counsel's ineffective

24  assistance was a sufficient cause, as Petitioner has not shown he was prejudiced by his

25  attorney's conduct.

26                  b.      Prejudice

27      Prejudice is a required element for Petitioner to overcome a procedural bar.  Prejudice

28  is also a required element for both Petitioner's claims of prosecutorial misconduct and of

1  ineffective assistance of counsel.  Because this Court finds that a lack of prejudice against

2  Petitioner negates these claims, that issue shall be addressed first.

3  In order to establish prejudice to overcome a procedural default, Petitioner must show

4  "not merely that the errors at his trial created a possibility of prejudice, but that they worked

5  to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

6  dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982) (discussing prejudice

7  where defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255);

8  Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice [to excuse a

9  procedural default] is actual harm resulting from the alleged error." Vickers v. Stewart, 144

10  F.3d 613, 617 (9th Cir. 1998).

11  Here, the isolated statement made by the prosecutor during closing arguments was by

12  no means the only instruction that the jury received for determining whether "great bodily

13  injury" had been caused.  The jury was correctly instructed by the court that "[t]he term 'great

14  bodily injury' means a significant or substantial physical injury. Minor, trivial or moderate

15  injuries do not constitute great bodily injury." (Lodged Doc. 6 at 660 (quoting CALJIC 17.19.5)).

16  The jury was also instructed by the trial judge that "[i]f anything concerning the law said by the

17  attorneys in their arguments or at any other time during the trial conflicts with my instructions

18  on the law, you must follow my instructions."  (Id.)

19  Absent some indication to the contrary, juries are presumed to understand and to follow

20  the instructions given to them by the court.  See, e.g., Penry v. Johnson, 532 U.S. 782, 799

21  (2001); Weeks v. Angelone, 528 U.S. 225, 226 (2000);  Richardson v. Marsh, 481 U.S. 200,

22  211 (1987).  Since there is no evidence to the contrary, it can be presumed that, despite the

23  prosecutor's misstatement, the jury did gain a clear understanding of what is required for a

24  finding of "great bodily injury" under California law.  Moreover, the overwhelming evidence in

25  this case is that the injuries inflicted upon the victim fit any definition of "great bodily injury."

26  The victim, Moreno, had been shot three times, had extensive bleeding from the face, hand,

27  and chest, and had holes in his skin. The jury saw the pictures of the wounds.  Even if the

28  prosecutor had not stated that a gunshot wound is by law a great bodily injury, it is highly

1  unlikely that the jury would have found Moreno's wounds to be "minor, trivial, or moderate."

2  CALJIC 17.19.5. Therefore, the prosecutor's statement did not prejudice Petitioner, or had a

3  "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S.

4  at 637.  Accordingly, Petitioner has not made a sufficient showing of cause and prejudice to

5  overcome the procedural bar as to his claim of prosecutorial misconduct and cannot establish

6  "actual harm resulting from the alleged error" sufficient to excuse the default. <u>Vickers</u>, 144 F.3d

7  at 617; <u>Frady</u>, 456 U.S. at 170.

8        Likewise, defense counsel's failure to object to the prosecution's statement did not

9  prejudice Petitioner. Petitioner must demonstrate that "there is a reasonable probability that,

10  but for counsel's unprofessional errors, the result ... would have been different," <u>Strickland v.</u>

11  <u>Washington</u>, 466 U.S. 668, 694 (1984). Here even if counsel objected to the statement, there

12  is no reasonable probability that the jury's finding of great bodily injury would be different in

13  light of the strong evidence of significant injury presented during trial. Accordingly, Petitioner

14  has not shown prejudice to overcome the default.

15                  c.      Miscarriage of Justice

16        Finally, Petitioner can avoid a procedural default if he can demonstrate that a

17  fundamental miscarriage of justice would result from the default. The United States Supreme

18  Court has limited the "miscarriage of justice" exception to petitioners who can show that "a

19  constitutional violation has probably resulted in the conviction of one who is actually innocent."

20  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). "In order to pass through <u>Schlup</u>'s gateway, and

21  have an otherwise barred constitutional claim heard on the merits, a petitioner must show that,

22  in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not

23  that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>Majoy</u>

24  <u>v. Roe</u>, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting <u>Schlup</u>, 513 U.S. at 327. In applying this

25  standard, "A petitioner need not show that he is 'actually innocent' of the crime he was

26  convicted of committing; instead, he must show that '"a court cannot have confidence in the

27  outcome of the trial.'" <u>Majoy</u>, 296 F.3d at 776, quoting <u>Carriger v. Stewart</u>, 132 F.3d 463, 478

28  (9th Cir. 1987) (en banc), quoting <u>Schlup</u>, 513 U.S. at 316.

1    Here, Petitioner disputes the factual assertions of the victims, but has not presented any

2    credible evidence to undermine the factual assertions that form the basis of his convictions.

3    Without presenting reliable, credible evidence of his innocence, Petitioner has not made a

4    sufficient showing of actual innocence to serve as an equitable exception to procedural

5    default. Schlup, 513 U.S. at 324 ("To be credible, such a claim requires petitioner to support

6    his allegations of constitutional error with new reliable evidence -- whether it be exculpatory

7    scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was

8    not presented at trial. Because such evidence is obviously unavailable in the vast majority of

9    cases, claims of actual innocence are rarely successful.") Petitioner has not shown that it is

10   more likely than not that no reasonable juror would have found him guilty beyond a reasonable

11   doubt had counsel objected and the jury admonished regarding the statements of the

12   prosecutor, or that the Court cannot have confidence in the outcome of the trial due to the

13   errors of counsel. Id. at 314-15. Accordingly, Petitioner is procedurally barred from presenting

14   his claim.

15                    3.      Ineffective Assistance of Counsel

16   Petitioner also claims that he was denied his right to effective assistance of counsel

17   under the Sixth Amendment when his attorney failed to object to the prosecutor's statement

18   during trial. This Court's determination that the prosecutor's error did not result in actual

19   prejudice against Petitioner with regard to procedural default also resolves Petitioner's claim

20   of ineffective assistance of counsel in favor of Respondent. Petitioner's claim of ineffective

21   assistance of counsel fails on the merits for want of prejudice. Based on the evidence

22   described above, the jury instructions prevented the jury from relying on the prosecution's

23   statement and it is not likely that the result would have been different had defense counsel

24   presented timely objections. Strickland, 466 U.S. at 694.  There is nothing to indicate that the

25   state court ruled in a manner that was "contrary to, or involved an unreasonable application

26   of, clearly established Federal law, as determined by the Supreme Court of the United States;

27   or resulted in a decision that was based on an unreasonable determination of the facts in light

28   of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). Therefore,

1   Petitioner is not entitled to habeas relief.

2   **B.**   **Denial of Petitioner's Pretrial Marsden Motion**

3   Petitioner's second claim alleges the trial court committed prejudicial error by denying

4   Petitioner's pretrial Marsden motion (see People v. Marsden, 2 Cal.3d 118 (1970) (recognizing

5   that a California criminal defendant may move to have his court-appointed attorney substituted

6   for different counsel if the appointed attorney is rendering inadequate assistance)), thus

7   violating Petitioner's right to a fair trial, to due process of law, and to the right of counsel as

8   guaranteed by the Sixth and Fourteenth Amendments.  Specifically, Petitioner contends the

9   trial court's ruling resulted in Petitioner being denied his right to be heard under Rock v.

10  Arkansas, 483 U.S. 44, 51 (1987).  Respondent contends Petitioner is incorrect and the state

11  court reasonably rejected the claim. This claim was rejected on direct appeal. The appellate

12  court issued the last reasoned decision, as follows:

13  *II. Marsden motion*

14  [Petitioner] contends the trial court erred when it denied his pretrial request
    for new appointed counsel. He claims the trial court limited the Marsden[FN2] hearing
15  to a determination of whether counsel was ineffective and refused to consider
    whether there were other grounds for substitution.

16  FN2. People v. Marsden (1970) 2 Cal.3d 118, 123.

17

18  Under Marsden, when a defendant in some manner moves to discharge
    current counsel, the trial court must permit the defendant to articulate his
    dissatisfaction, must question counsel if the defendant's assertions have raised
19  a question about counsel's effectiveness, and must allow counsel to respond. In
    addition, the trial court must make a sufficient record for review. (People v.
20  Mendez (2008) 161 Cal.App.4th 1362, 1368; see also People v. Eastman (2007)
    146 Cal.App.4th 688, 695.) The court should not appoint new counsel without a
21  proper showing, i.e., whenever a defendant can establish that appointed counsel
    is not providing adequate representation or that the relationship between counsel
22  and client has deteriorated to the point that ineffective representation is likely to
    result. (People v. Roldan (2005) 35 Cal.4th 646, 681; People v. Smith (1993) 6
23  Cal.4th 684, 696.) Whether the proper showing has been made lies within the trial
    court's discretion, which will not be overturned on appeal absent a clear abuse of
24  that discretion. (People v. Smith, supra, at pp. 695-696.)

25  The record shows that the trial court opened the hearing by telling [Petitioner]:

26  "In order for the Court to grant your motion, you must establish or convince
    the Court that Mr. Terry and/or the Public Defender's office has represented you
27  in a way that could constitute incompetence; that they failed to do something they
    should have. In the alternative, they have done something that has been against
28  your best interest as far as this case is concerned. [¶] What is it you want to tell
    the Court at this time to convince it that it should relieve the public defender?"

Although this opening comment does not specifically ask whether there are irreconcilable differences between [Petitioner] and his attorney, the comments did not restrict [Petitioner] in any way. The court focuses on the adequacy of representation because, as we have stated, this is the focus of a Marsden hearing.

The court also invited [Petitioner] to raise anything that he thought counsel had done that would be against [Petitioner's] best interest. The court continued the discussion with a number of inquiries, all open-ended and all seeking to understand the nature of [Petitioner's] complaints. [Petitioner] offered the court names of witnesses who could vouch for his innocence, but he could not explain how those witnesses could testify about [Petitioner's] connection to the charges.

[Petitioner] claimed he had told counsel he had not caused the death in this case and expressed disappointment with the nature of the offers coming from the district attorney's office (25 years), something counsel did not control. [Petitioner] told the court, "I've explained everything to [counsel] about all of my involvement in this situation." When asked if there was anything else [Petitioner] wanted to tell the court, [Petitioner] stated, "Well, all I can say is it seems that he hasn't helped me." [Petitioner's] complaints expressed a vague dissatisfaction with the way things were looking for him, but he never identified any specific problem with his relationship with counsel or a breakdown in the attorney-client relationship.

[Petitioner's] primary complaint was that the public defender had not been able to negotiate a better deal and that the law found him culpable in the murder, even though he had not pulled the trigger himself. A full reading of the hearing transcript convinces us that [Petitioner] was not restricted with respect to the nature of his complaints. He was allowed to express his concerns and the trial court correctly concluded that his complaint was insufficient to relieve the public defender and to require appointment of new counsel. There is no <u>Marsden</u> error.

(<u>See</u> Lodged Doc. 3.)

Under the Sixth Amendment to the United States Constitution, an indigent state prisoner is entitled to the assistance of counsel at every critical stage of the proceedings. <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963). Such assistance must be effective and competent. <u>Strickland</u>, 466 U.S. at 668. In addition, the Sixth Amendment guarantees a defendant a right to conflict-free representation. <u>See</u> <u>Garcia v. Bunnell</u>, 33 F.3d 1193, 1195 (9th Cir. 1994). However, indigent defendants do not have a constitutional right to be represented by their counsel of choice. <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 625 (1989); <u>United States v. Rewald</u>, 889 F.2d 836, 856 (9th Cir. 1989) (recognizing that the right to choice of counsel is limited to defendants who can retain counsel). Nor does the Sixth Amendment guarantee a "meaningful attorney-client relationship." <u>Morris v. Slappy</u>, 461 U.S. 1, 13-14 (1983) (internal quotation marks omitted). "[T]he essential aim of the [Sixth] Amendment is to

1   guarantee an effective advocate for each criminal defendant rather than to ensure that a

2   defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United

3   States, 486 U.S. 153, 159 (1988). "[T]here is no automatic right to a substitution of counsel

4   simply because the defendant informs the trial court that he is dissatisfied with appointed

5   counsel's performance." Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990).

6          In reviewing a federal habeas claim based on the denial of a motion for substitution of

7   counsel, "the ultimate constitutional question the federal courts must answer" is whether the

8   state trial court's disposition of the motion violated a petitioner's constitutional rights because

9   the conflict between the petitioner and appointed counsel "had become so great that it resulted

10  in a total lack of communication or other significant impediment that resulted in turn in an

11  attorney-client relationship that fell short of that required by the Sixth Amendment." Schell v.

12  Witek, 218 F.3d 1017, 1026 (9th Cir. 2000). As explained by the Ninth Circuit:

13          [t]he test for determining whether the trial judge should have granted a substitution
            motion is the same as the test for determining whether an irreconcilable conflict
14          existed. The court must consider: (1) the nature and extent of the conflict, to
            determine whether the conflict deprived the defendant of representation
15          guaranteed by the Sixth Amendment; (2) whether the trial judge made an
            appropriate inquiry into the extent of the conflict; and (3) the timeliness of the
16          motion to substitute  [*146] counsel.

17  Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).

18         Here, the state court's decision denying Petitioner's Marsden claim was neither contrary

19  to nor an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d).

20  As set forth above, the trial court held a thorough and fair hearing on Petitioner's motion for

21  substitute counsel. During Petitioner's Marsden hearing, the trial court made the following

22  statement and open-ended question to Petitioner:

23          "In order for the Court to grant your motion, you must establish or convince the
            Court that Mr. Terry and/or the Public Defender's office has represented you in a
24          way that could constitute incompetence; that they failed to do something they
            should have. In the alternative, they have done something that has been against
25          your best interest as far as this case is concerned. [¶] What is it you want to tell
            the Court at this time to convince it that it should relieve the public defender?"
26
27  (Lodged Doc. 7 at 4.) Petitioner argues that the questions asked to him by the trial court did

28  not specifically inquire whether there were irreconcilable differences between him and his

    attorney.  Petitioner points out that under Marsden, irreconcilable differences are grounds for

1    replacing appointed counsel, and claims that because this specific question was not asked by

2    the trial court, he was denied his opportunity to be heard on the issue. In Adelzo-Gonzalez,

3    the Ninth Circuit explained that "[w]hile open-ended questions are not always inadequate, in

4    most circumstances a court can only ascertain the extent of a breakdown in communication

5    by asking specific and targeted questions." United States v. Reyes-Bosque, 596 F.3d 1017,

6    1034 (9th Cir. 2010); United States v. Adelzo-Gonzalez, 268 F.3d 772, 777 (9th Cir. 2001).

7    However here, like in Reyes-Bosque there was no evidence of antagonism or serious

8    breakdown to suggest that the court needed to inquire more thoroughly than it did. Instead,

9    it appeared that Petitioner was mostly upset that he was charged with a serious crime, and

10   was receiving what he considered to be favorable plea offers.

11        It is true that "a defendant's Sixth Amendment right to counsel is violated if the

12   defendant is unable to communicate with his or her counsel during key trial preparation times."

13   Daniels, 428 F.3d at 1197. However, Although Petitioner was unhappy with his defense, it

14   appears that the communication between himself and counsel was satisfactory

15        Breakdowns in the attorney-client relationship that rise to the level of a conflict of interest

16   warranting substitution of counsel have been marked by (1) "a complete communications

17   breakdown," see United States v. Nguyen, 262 F.3d 998, 1004-05 (9th Cir. 2001); (2) an

18   attorney's "open opposition" to his client, including "bad language and threats" to provide

19   substandard performance if the client persisted in demanding to go to trial, that left the

20   defendant "effectively unrepresented," United States v. Adelzo-Gonzalez, 268 F.3d 772, 779

21   (9th Cir. 2001); or (3) "an atmosphere of mistrust, misgivings and irreconcilable differences."

22   United States v. Moore, 159 F.3d 1154, 1159 (9th Cir. 1998). Although in this case Petitioner

23   may have been dissatisfied with some aspects of his defense, the hearing on the motion

24   reflected that there was no irreconcilable conflict warranting removal of counsel. See Plumlee

25   v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) ("Petitioner has cited no Supreme

26   Court case — and we are not aware of any — that stands for the proposition that the Sixth

27   Amendment is violated when a defendant is represented by a lawyer free of actual conflicts

28   of interest, but with whom the defendant refuses to cooperate because of dislike or distrust").

U.S. District Court
E. D. California

"The Supreme Court has held that a defendant is constitutionally entitled to a lawyer who is free of conflicts of interest and who can act as a loyal advocate." Id. at 1211. During the hearing, Petitioner stated that counsel had not done anything at all and that it seems that counsel was not helping him. (See Lodged Doc. 7 at 6, 11.) When defense counsel was provided an opportunity to explain, he stated:

> Basically, your Honor, I've explained, to [Petitioner] that based on my review of the evidence and certainly with regards to his statements to the police, that this would be a very difficult case to defendant. I had anticipated doing a number of trial motions with regard to the trial if he elected to go to trial. I've explained to him my assessment of the case, and I've reviewed all the materials, all the discovery I've received from the People and - and I've given him my honest assessment of the case. I've conveyed the offer from the People, and I've told him that the choice, whether or not he goes to trial, is totally up to him, and it's either ["LWOP"][4] (sic) or the offer was 25 to life as of today. I conveyed that offer. There's nothing more I can do to..."

(Lodged Doc. 7 at 11-12.) Defense counsel conveyed his attempts to communicate with defendant regarding appropriate legal strategy. While Petitioner was not pleased with the advise of counsel, there was no evidence of a complete communications breakdown that would be considered a conflict of interest. After independently reviewing the record, the undersigned finds that the state court's denial of this claim was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

## C.   Ineffective Assistance of Counsel

Petitioner's third claim alleges that he was deprived of his Sixth Amendment right to effective assistance of counsel when his attorney failed to move to redact or request a limiting instruction for several statements that were made during his confession. Respondent contends Petitioner is incorrect and the state court reasonably rejected the claim.  This claim was also presented on direct appeal and was rejected. The appellate court issued the last reasoned decision, as follows:

*III. IAC claim*

At trial, the jury heard the entire transcript of the police interview of [Petitioner] and his confession. The interviewing detective told [Petitioner] that the

---

[4] It is assumed that defense counsel was referring to a sentence of life without the possibility of parole.

surviving victim had identified [Petitioner] from a photo as one of the perpetrators. The detective also told [Petitioner], "I have your ... wife in jail" and "she told me everything." [Petitioner] contends (1) he was denied effective assistance of counsel when his attorney failed to either request that these two statements be redacted from the interview presented to the jury, or (2) to request a limiting instruction telling the jury they could not consider these two statements for the truth of the matter asserted.

To reiterate, [Petitioner] must show that counsel failed to act in a manner to be expected of a reasonably competent attorney, and that it is reasonably probable a more favorable result would have been obtained absent counsel's failings. (People v. Lewis, supra, 50 Cal.3d at p. 288.) When a defendant cannot establish the second prong of this test, it is unnecessary to first consider whether counsel's performance was deficient. (People v. Welch, supra, 20 Cal.4th at p. 751.)

Even if we assume the statements are objectionable, we conclude there is no prejudice. (See Crawford v. Washington (2004) 541 U .S. 36 [out-of-court statements by witness who does not testify at trial are inadmissible under Sixth Amendment].) Considering the detective's statements in context, whether true or not, they are easily understood to be enticements to tell the truth. Although [Petitioner] at first denied any involvement in the crimes, the detective, by confronting [Petitioner] with these two statements, was trying to convince [Petitioner] the police already had information connecting him to the crime. The impact of these two statements was limited. No further evidence was presented about identification, no detail was provided about the wife's statements, and the prosecutor did not emphasize or rely upon these statements at trial. The evidence of guilt is strong. The case rested on [Petitioner's] detailed accurate confession and the corroborating physical evidence. This included the location of the crime, the people involved, the guns that were used, the location of the truck at the rest stop, and the location of the drugs in Chavez's garage.

At trial, [Petitioner's] defense was that he participated in the crime under duress because he was afraid that if he objected to the killings, his family would be in danger. Although [Petitioner] claims on appeal that he confessed to protect his wife who had been arrested and was innocent, this claim does not offer a defense to the crime and was not framed as a defense at trial. There was no evidence at trial and no assertion on appeal that [Petitioner's] wife was the actual perpetrator of the crimes or that the police believed she was the perpetrator. Given the corroborated detail of [Petitioner's] confession, it is unlikely the jury would have disregarded it even had they not heard the two statements [Petitioner] now claims were wrongly admitted. For these reasons, we are convinced beyond a reasonable doubt that the outcome would not have been more favorable to [Petitioner] even had the jury been given a limiting instruction or had the interview been redacted to omit these two statements. (Chapman v. California (1967) 386 U.S. 18.) [Petitioner's] ineffective-assistance-of-counsel claim fails.

(See Lodged Doc. 3)

Petitioner contends that his attorney should have requested either a redaction or a limiting instruction for two statements made by the police detective during his confession interview. A tape of the interview was played for the jury. The first statement made by the detective to Petitioner was that the surviving victim had identified Petitioner from a photo as

1    one of the perpetrators, and the second statement was when the detective told Petitioner "I

2    have your ... wife in jail" and "she told me everything."  These statements were intended to

3    elicit incriminating testimony from Petitioner, and Respondent provides no evidence that the

4    statements were truthful.

5                    1.    Legal Standard for Ineffective Assistance of Counsel

6            The law governing ineffective assistance of counsel claims is clearly established for the

7    purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

8    151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

9    assistance of counsel, the Court must consider two factors.  Strickland v. Washington, 466

10   U.S. 668 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must

11   show that counsel's performance was deficient, requiring a showing that counsel made errors

12   so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

13   Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

14   representation fell below an objective standard of reasonableness, and must identify counsel's

15   alleged acts or omissions that were not the result of reasonable professional judgment

16   considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344,

17   1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

18   indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

19   professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S.

20   Ct. 770 (2011).

21           Second, the petitioner must demonstrate that "there is a reasonable probability that, but

22   for counsel's unprofessional errors, the result ... would have been different," Strickland, 466

23   U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive

24   defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate

25   whether the entire trial was fundamentally unfair or unreliable because of counsel's

26   ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d

27   1456, 1461 (9th Cir. 1994).

28           A court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court

1    was so lacking in justification that there was an error well understood and comprehended in

2    existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

3        Accordingly, even if Petitioner presents a strong case of ineffective assistance of

4    counsel,  this Court may only grant relief if no fairminded jurist could agree on the correctness

5    of the state court decision.

6                    2.    Analysis

7        In this case, the state court applied the established California standard for issues of

8    ineffective assistance of counsel:

9            [Petitioner] must show that counsel failed to act in a manner to be
             expected of a reasonably competent attorney, and that it is reasonably probable
10           a more favorable result would have been obtained absent counsel's failings.
             People v. Lewis, 50 Cal.3d 262, 288 (1990).   When a defendant cannot
11           establish the second prong of this test, it is unnecessary to first consider whether
             counsel's performance was deficient.   People v. Welch, 20 Cal.4th 701, 751
12           (1999).

13   (See Lodged Doc. 3 at 3.)

14       The rule applied by the California court tracks closely with the federal rule established

15   in Strickland. The first prong is that the attorney performs incompetently. "The question is

16   whether an attorney's representation amounted to incompetence under 'prevailing professional

17   norms,' not whether it deviated from best practices or most common custom." Strickland, 466

18   U.S. at 690.  The second prong is that the defendant suffers prejudice due to the attorney's

19   incompetence. "With respect to prejudice, a challenger must demonstrate 'a reasonable

20   probability that, but for counsel's unprofessional errors, the result of the proceeding would

21   have been different. A reasonable probability is a probability sufficient to undermine

22   confidence in the outcome.'" Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at

23   694).

24       The state court held that even if the statements were objectionable (as prohibited

25   evidence under Crawford v. Washington, 541 U.S. 36 (2004), for example), that Petitioner's

26   claim failed because he was not prejudiced by the attorney's performance.  It noted that the

27   statements were clearly understood to be enticements to tell the truth.  The prosecutor did not

28

1   rely on these statements in making his case, and the impact of the statements had been

2   minor. The court also found that the evidence of guilt was great, including Petitioner's detailed

3   confession relaying accurate and corroborating details of the crime. He knew the people

4   involved, the guns that were used, the location of the abandoned vehicle belonging to the

5   victims, and the location of the drugs that had been stolen from them. Petitioner's defense to

6   the crime was that he had taken part, but only under duress. There is no logical connection

7   to be drawn between the statements that were made and the jury's guilty verdict in this case.

8   Under the "beyond reasonable doubt" standard in Chapman v. California, 386 U.S. 18 (1967),

9   the state court found "beyond a reasonable doubt that the outcome would not have been more

10  favorable to [Petitioner] even had the jury been given a limiting instruction or had the interview

11  been redacted to omit these two statements." (Lodged Doc. 3 at 6.)

12          Under AEDPA, the question before this court is whether the state court's ruling with

13  regards to ineffective assistance of counsel was contrary to, or an unreasonable application

14  of, the clearly established federal law as stated in Strickland. The state court based its ruling

15  on Petitioner's failure to satisfy the 'prejudice' prong of the Strickland test. This Court agrees

16  with the state court's conclusion that, based on the evidence at trial, Petitioner was not

17  prejudiced by the statements. In making this conclusion, the state court relied upon the

18  "beyond a reasonable doubt" standard in Chapman. This is a stricter standard than applied

19  on federal collateral review. In a habeas claim for ineffective assistance of counsel, the test

20  is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the

21  result ... would have been different," Strickland, 466 U.S. at 694.

22          This Court finds that Petitioner did not suffer actual prejudice as a result of the

23  statements in question, or as a result of his attorneys failure to request a redaction or limiting

24  instruction with regards to those statements. Petitioner provides no argument that undermines

25  confidence in the outcome of Petitioner's trial. Furthermore, the state court did not apply any

26  federal law in a manner that was contrary to, or involved an unreasonable application of, the

27  rule in Strickland, or that it based its holding on an unreasonable determination of the facts in

28

light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, Petitioner's claim on this particular ground is denied.

## V.    FINDINGS AND RECCOMENDATIONS

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter judgment.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    August 10, 2012                    /s/ Michael J. Seng
                                   UNITED STATES MAGISTRATE JUDGE